Richard Wengert *v.* Zoning Hearing Board of Upper Merion Township. Upper Merion Township, Appellant.

Argued April 7, 1980, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Gregory J. Dean,* of *Meneses & Dean,* for appellant.

*Lois Reznick,* with her *George J. Miller, Dechert, Price & Rhoads,* for appellees.

OPINION BY JUDGE WILKINSON, JR., April 29, 1980:

This zoning appeal involves the question of whether a foster home for troubled adolescents who are referred by the courts, limited to six foster children,[1] attended by two foster parents and one or more assistants, can qualify as a permitted use in a R-2 residential district as a single family residential use. The zoning ordinance defines single family detached dwelling, family and dwelling as follows:

> Dwelling, Single-Family Detached—A building designed for and occupied exclusively as a residence for only one family and having no party wall in common with an adjacent building.

> Family—Any number of individuals living together as a single non-profit housekeeping unit and doing their cooking on the premises, excluding, however, occupants of a club, fraternity house, lodge, residential club or rooming house.

> Dwelling—A building designed for and occupied exclusively for residence purposes, ex-

---

[1] In its order of December 21, 1978, from which this appeal is taken, the Court of Common Pleas of Montgomery County stated:

It is further decreed that Appellants Wengert may use the premises for a foster home as a matter of right as a single family residence within the meaning of the Upper Merion Township Zoning Ordinance, subject however to a restriction as to the number of minors which (sic) may be accommodated, and which number shall *not be less than* six (6). (Emphasis added.)

Apart from whether the court may put a restriction on what it rules to be a use as a matter of right, we assume the court intended to say the number could be *not more than six.*

cluding hotel, rooming house, tourist home, institutional home, residential club, motor lodge, and the like.

The matter arose on a request for a special exception. The Zoning Hearing Board (Board) denied the request. On appeal, the court of common pleas remanded the case to the Board, reserving judgment on the question of a special exception and directing it to consider whether this was a permitted use. The Board decided it was not a permitted use, relying on its determination from the records as follows:

1. Children residing at the premises are committed to the location by the Courts.

2. Children confined to the premises by the Court are not free to leave at their desire, they must be released by the Court upon a determination that they have been rehabilitated and can conform to acceptable social standards.

3. The corporate owner of the premises hires houseparents (the present applicants) who are responsible for enforcement of the rules and regulations established by the Board of Directors for the behavior of the children committed to the premises.

4. The corporate owner is paid by the County a per diem rate for each of the children assigned to the premises.

5. Prior to any assignment of the children to the premises, the corporate officers and employees have an opportunity to review and/or reject them.

6. The commitment of the children to the premises by the Court is in lieu of a commitment to a larger penal institution or 'an alternative to institutionalizing' them.

7. At all times when the children are residing at the premises, they are under the juris-

diction of the Court to which periodic reports must be made.

The Board concluded that this foster home was excluded as a correctional or penal institution or as a club, fraternity house, residential club, or rooming house.

On appeal back to the court of common pleas, the decision of the Board was reversed, the court concluding that this foster home more nearly resembles "a home where a married couple . . . accepts foster children within their own home." We must reverse.

In presenting their case, appellees offered evidence that they have improved the property by fireproofing the basement, furnace room and stairwells, placed fire doors on all stairwells, installed a second-story fire escape and safety glass on all windows near the fire escape. One of appellant's witnesses significantly observed, "You don't do this in a residential home." Appellees also presented evidence that in addition to the "foster parents" (who are under the supervision and direction of a board of directors), there are presently on the premises two residential staff people, a consultant psychologist, and relief houseparents whenever the "foster parents" are away. Surely this supports the Board's conclusion that this is not the normal foster home where a family accepts juveniles into a family surrounding as a substitute family home.

This case is controlled by this Court's decision in *Pennsylvania George Junior Republic v. Zoning Hearing Board of Coolspring Township*, 37 Pa. Commonwealth Ct. 151, 389 A.2d 261 (1978). On facts on all controlling points quite similar to the instant case, we held the foster home to be an institutional home and therefore not a permitted use. The court of common pleas in the instant case attempted to distinguish *George Junior Republic, supra*, on the basis that the children to occupy the foster home were transferred

from a larger institution of in excess of 225 boys. We do not consider this as a distinguishing fact.

Accordingly, we will enter the following

ORDER

AND Now, April 29, 1980, the order of the Court of Common Pleas of Montgomery County, Civil Action—Law, No. 76-19836, Zoning Appeal, dated December 21, 1978 is reversed and the matter is remanded to said court of common pleas to consider the question of whether a special exception should be granted.